IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR - 7 2008
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | NO. 4:07-CR-188-A |
| § | |
| LAWRENCE ALAN HABERMAN, ET AL. § | |

MEMORANDUM OPINION

On March 4, 2008, the court denied a motion filed by defendant Lori Beth Haberman ("Lori") requesting release from custody. In this Memorandum Opinion, the court discusses factors the court took into account in denying that motion, some of which bear, coincidentally, on the issue of whether the court should accept the plea agreement between Lori and the government, filed February 1, 2008.

I.

The Criminal Complaint Leading
to the Filing of the Indictment Against
Lori and Her Brother

On November 19, 2007, the government filed a criminal complaint, verified by the oath of Brian Finney, Special Agent, Drug Enforcement Administration, ("affiant") in No. 4:07-251-MJ on the docket of United States Magistrate Judge Charles Bleil, by

which the affiant swore that to the best of his knowledge and belief:

> From at least on or about September 1, 2007 and continuing thereafter until on or about November 17, 2007, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendants Lawrence Alan Haberman, aka "Larry", and Lori Beth Haberman, and others unknown, did knowingly and intentionally combine, conspire, confederate, and agree to distribute and possess with intent to distribute more than 5 kilograms of cocaine, a Schedule I Controlled Substance.

Criminal Compl. at 1. The affiant related as facts on which the complaint was based that:

In September 2007, two confidential sources began negotiations with Lawrence Alan Haberman ("Larry") for Larry to purchase several hundred kilograms of cocaine. During those discussions, which went on for more than a month in a series of telephone calls and meetings, Larry identified Lori, his sister, as his partner in the cocaine business. On November 16, Larry met with the confidential sources in Arlington, Texas. When he told them that he had brought $750,000.00 cash to purchase as much cocaine as possible, the confidential sources agreed to sell him fifty-five kilograms of cocaine and provide to him on consignment an additional forty-five kilograms of cocaine.

2

On November 17, Larry delivered to the confidential sources in Arlington approximately $375,000.00 in United States currency, which had been loaded into a wood crate. One of the confidential sources left with the currency in a duffle bag and was supposed to deliver the money to the supplier of the cocaine, and then return with 100 kilograms of cocaine, at which time Larry was to deliver another $375,000.00 in cash to complete the transaction. When later on November 17 Larry met with the confidential sources for the purpose of arranging for the exchange of the additional $375,000.00 cash for the promised cocaine, Larry was arrested.

An hour or so after Larry was arrested, law enforcement officers executed a search warrant on the room at the Admiral Hotel, in Arlington, where the investigators had learned Larry and Lori were staying. Hotel personnel informed the affiant that Larry and Lori had two wooden crates with them when they checked in, and that when hotel personnel tried to assist Larry with the wooden crates, he would not allow them to touch the crates, insisting that he move them to the room by himself. The officers located in the room, and seized, several items, including a second wood crate that contained a large amount of U.S. currency.

Apparently while the search warrant was being executed, officers arrested Lori at the Admiral Hotel. After having

3

received her Miranda warnings, Lori told the affiant that she had rented a van in which she and Larry had driven to Arlington from the Smithfield, Michigan area, and that she and Larry had transported from Michigan to Texas, on or about November 16, 2007, the two crates that contained the large amounts of currency.

II.

## DEA Investigation Reports of Events Leading to the Filing of the Criminal Complaint

The Drug Enforcement Administration ("DEA") created a large number of written reports of investigation pertaining to events leading up to the November 17 drug transaction. The reports show that the negotiations between Larry and the confidential sources commenced in early September 2007. According to the reports, Larry had previously been involved in numerous 100-kilogram cocaine transactions, with the cocaine being delivered to the Detroit, Michigan, area. One of the confidential sources said that Larry had made several million-dollar payments to him/her in the past.

In late October 2007 Larry invited one of the confidential sources to come to Tampa, Florida, so Larry could introduce him/her to his people in Florida. Either that day, or the

4

following day, Larry invited the other confidential source to come to Tampa so Larry could introduce him/her to his sister, stating that he wanted his sister to show the confidential source what her role in the organization was.

The reports pertaining to the events of November 16 and 17, 2007, basically correspond with the facts recited in the criminal complaint filed November 19. According to the reports, the negotiations between Larry and one of the confidential sources concerning exchanging the cash for the cocaine continued in Arlington on November 16, 2007, into the morning of November 17, when arrangements were made for Larry to deliver the $375,000.00 advance payment.

According to the reports, the search of Lori and Larry's room at the Admiral Hotel on November 17 resulted in the seizure of the following items:

> A rental receipt showing that Lori had rented on November 14, 2007, in Smithfield, Michigan, the vehicle Larry and Lori drove from Michigan to Texas (which was found in the hotel parking lot);

> A cardboard and wood frame crate labeled with the logo "America's Water Conditioning Company";

> U.S. currency in the amount of $381,140.00 located inside the crate;

> Business labels and business cards bearing the logo "America's Water Conditioning Company";

5

Four white shirts monogrammed with the name "Lori" and the words "America's Water Conditioning Company";

A small black pillow labeled with the logo "America's Water Conditioning Company";

A digital pager and an AT&T Blackberry phone found inside Lori's purse.

The pager found in Lori's purse showed the telephone numbers of several callers. One of the numbers was determined to be a cellular telephone number of a person in Tampa, Florida. The Blackberry phone found in Lori's purse listed in the Personal Setting tab that Larry was the owner of the phone. Lori's telephone number was listed in the Online Directory. Two hundred and sixty-six calls were recorded on the phone from November 6 through November 17, the date of the drug transaction that resulted in the arrest of Lori and Larry. Six calls were made on November 17, thirty-one on November 16, seventeen on November 15, seven on November 14, forty-eight on November 13, twenty-nine on November 12, eight on November 11, sixteen on November 10, thirty on November 9, forty-one on November 8, thirty-two on November 7, and one on November 6.

Little information is contained in the reports concerning the identities of the callers or the owners of the numbers called, as recorded on the Blackberry cell phone. The few that

were identified are as follows: A number recorded on November 15 is shown to be listed to the parents of Lori and Larry in Sarasota, Florida; a number recorded on November 14 is shown to be listed to a person in St. Petersburg, Florida; a number recorded on November 13 is shown to be listed to a person in Fort Lauderdale, Florida; a number recorded on November 13 is shown to be listed to a car rental agency in Fort Lauderdale, Florida; a number recorded on November 13 is shown to be listed to an attorney in Bloomfield Hills, Michigan; a number recorded on November 12 is shown to be listed to a firm in West Palm Beach, Florida; a number recorded on November 11 is shown to be listed to a number linked to a Miami DEA investigation; a number recorded on November 9 is shown to be listed to the Broward County Courthouse, Fort Lauderdale, Florida; and a number recorded on November 8 is shown to be listed to a person in West Palm Beach, Florida. Three of the calls made on November 17, one at 11:40 a.m., one at 12:20 p.m., and another at 1:15 p.m., show a Fort Worth/Arlington area telephone number (817-965-0726). However, nothing in the investigation material identifies the person to whom that number is listed.

III.

## Post-Arrest Activities Through the Detention Hearing

Lori was brought before Magistrate Judge Bleil on November 19, 2007. She completed a financial affidavit to the end of obtaining court-appointed counsel. In the affidavit, she certified that she earned $800.00 per month through self-employment; that the only cash on hand or money in savings or checking accounts she had was in the total amount of $2,000.00; and, that her only other asset of value was a $100,000.00 one-half interest in her residence. J. Rex Barnett ("Barnett") was appointed to represent her. The government filed a motion for pretrial detention, representing to Judge Bleil that Lori faced a maximum sentence of life and that she should be detained because there were no conditions of release that would reasonably assure her appearance as required or the safety of the community or of another person. A detention hearing was set for November 21, 2007.[1]

---

[1]The same November 19 activities pertaining to Lori occurred as to Larry that same date. The attorney appointed to represent him was the Federal Public Defender for the Northern District of Texas. In his financial affidavit, he swore that he was self-employed; that he earned $2,000.00 per month; that the total amount he had by way of cash on hand or money in savings or checking accounts was $2,500.00; that his other assets consisted of $75,000.00 value in a home co-owned
(continued...)

8

The only witness called at the November 21 detention hearing was Kevin Brown ("Brown"), a Tarrant County District Attorney criminal investigator assigned to the DEA. His testimony pertinent to the subjects of this Memorandum Opinion was as follows:

In September and October 2007, Brown had discussions with the two confidential sources mentioned in the criminal complaint concerning Larry, both of whom advised that they had dealt with Larry in the 1990s and had sold him hundreds of kilos of cocaine. Their dealings with Larry stopped when one of the confidential sources had been arrested with cocaine intended to be delivered to Larry.

DEA arranged for the confidential sources to reestablish their contacts with Larry to the end of setting up a drug transaction. The confidential sources complied, and their activities in relation to Larry were closely monitored from then until Larry and Lori were arrested on November 17.

In late October 2007, through the cooperation of the confidential sources, undercover officers joined in the

---

[1](...continued)
with his sister; a 1974 GMC Suburban worth $1,000.00; and a 2006 Navigator worth $25,000.00.

negotiations and communications with Larry. In early November 2007, the confidential sources met with Larry in Fort Lauderdale, Florida, to continue negotiations. Larry had an interest in the confidential sources coming to Fort Lauderdale so he could show them the business, at which time Larry told one of the confidential sources that his sister would be in Fort Lauderdale and that "she handled the money part of his transactions." Nov. 21, 2007, Tr. at 9.

When Larry met with the confidential sources in Arlington, Texas, on November 16, he discussed with them the fact that "if the police approached him or went to arrest him, that he would say that he was an old man, he had Alzheimer's, he had amnesia, he had many health problems, he didn't know what was going on, how did I get to this parking lot." Id. at 9-10. Brown was present when Larry was arrested. As Larry had said he planned to do, when he was arrested Larry "stated that he had amnesia and that he was an old man and he had health problems." Id. at 12. As a result of his pretense, Larry was put in the hospital for approximately five hours while doctors checked him out.

Brown described the occurrence of many of the events mentioned by the affiant in the criminal complaint, and described how Lori was located and arrested at the Admiral Hotel. He

10

described the two crates in which the money--in excess of $750,000.00 in U.S. currency--was placed as being wood-framed crates, with cardboard inside the wood frame, with an "America's Water Conditioning Company" logo and a 1-800 number on each side. They found in Lori and Larry's hotel room "America's Water Conditioning Company" business cards bearing Lori's name; uniform shirts bearing the "America's Water Conditioning Company" logo and Lori's name; and four or five tall pop-up-type advertisements with "America's Water Conditioning Company" on them. Also located in the hotel room were approximately twenty-five cellular telephones.

In urging Judge Bleil to conclude that there was probable cause to believe that Lori committed the offense set out in the criminal complaint, Assistant United States Attorney Frederick M. Schattman ("AUSA Schattman") argued to Judge Bleil that:

> With regard to the defendant Lori Beth Haberman, would point out several things. One, is the information that Mr. Haberman had given that Ms. Haberman handled the money business, and that, in fact, comes true on November the 16th, 2007, when she is here, has the money in boxes with labels on them, uniform shirts for the same company, business cards with her name on them for that same company.

Id. at 32-33. Based on those facts, AUSA Schattman urged Judge Bleil to find that "there are no conditions or combination of

11

conditions that can reasonably assure safety of the community and also find that [she] would pose a danger to the community at large and that there are no conditions that would reasonably assure [her] appearance as required." Id. at 33.

At the conclusion of the evidence and argument of counsel, Judge Bleil signed an order requiring Lori's detention pending trial, finding that there was probable cause to believe that Lori had committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. § 841, and that she had not rebutted the presumption established by such a finding that no condition or combination of conditions would reasonably assure her appearance as required and the safety of the community. An identical order was entered as to Larry.

IV.

## Results of the Search of Lori's Residence

On November 18, 2007, law enforcement officials, pursuant to a search warrant, searched the residence of Lori in Smithfield, Michigan. In the room they had identified as Lori's bedroom, they found drug paraphernalia, including a white powdery substance that field-tested positive for cocaine,[2] and

---

[2]None of the information provided to the court discloses the net
(continued...)

approximately $3,260.00 in cash, located inside the closet. In a smaller side room in the basement the officers found fourteen growing marijuana plants, a plastic bag containing thirty-five gross grams of marijuana, a money counter and box, a file box containing drug notes, two calculators, and two sheets of business cards bearing the names of Larry and Lori. In the main room of the basement the officers found two wooden crates, one of which was labeled with "America's Water Conditioning Company" logo, with a phone number.

Apparently bank records were found among the papers located in the house. The government furnished to the probation officer a summary of cash deposits into two bank accounts carried in Lori's name, one of which she opened on September 12, 2007, and the other she opened on September 13, 2007. This summary shows that she made cash deposits to those accounts of $22,495.00 from

---

[2](...continued)
weight of, or the result of a lab test on, the powdery substance.

September 12 through October 31, 2007, as follows:

| No. of Deposits | Date of Deposit | Total Cash Deposits | Peoples State Bank | Fidelity Bank | Time of Deposit |
|---|---|---|---|---|---|
| 1 | 09/12/07 | $5,300.00 | $5,300.00 | | 11:42:17 |
| 2 | 09/13/07 | $3,949.00 | | $3,949.00 | 10:08:43 |
| 3 | 09/20/07 | $2,301.12 | $2,301.12 | | 9:01:45 |
| 4 | 09/20/07 | $2,702.13 | | $2,702.13 | 9:48:33 |
| 5 | 09/27/07 | $3,001.30 | | $3,001.30 | 13:13:47 |
| 6 | 09/27/07 | $2,022.25 | $2,022.25 | | 13:25:45 |
| 7 | 10/31/07 | $1,609.05 | | $1,609.05 | 15:13:35 |
| 8 | 10/31/07 | $1,610.15 | $1,610.15 | | 15:15:48 |
| TOTAL | | $22,495.00 | $11,233.52 | $11,261.48 | |

Upon studying financial records the government provided to the probation office, the probation office has discovered two other accounts in Lori's name into which she made rather significant deposits in 2007. The records show that she deposited to a Comerica bank account $2,450.00 on June 1, 2007, $1,116.50 on June 1, 2007, $1,611.00 on July 20, 2007, and $9,200.00 on August 14, 2007, and that she deposited to a Huntington Bank account $2,503.60 on November 1, 2007, and $2,511.20 on November 9, 2007. The deposits that have been identified as having been made by Lori to bank accounts in her name from June through November 2007 total $41,887.30.

The probation officer discovered in records provided to her by the government that, at least for a period of time in the spring of 2006, Lori has written several checks on an account in her name to Larry. The checks the probation officer has identified are $1,650.00 dated April 6, 2006, $800.00 dated April 11, 2006, $802.36 dated April 27, 2006, $831.26 dated May 5, 2006, $820.01 dated June 2, 2006, and $732.12 dated June 8, 2006.

V.

Indictment and Arraignment

On December 12, 2007, an indictment was returned and filed charging both Lori and Larry with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine. By the time the indictment was returned, the government presumably had had an opportunity to fully evaluate the validity of the information they had implicating Lori in the drug distribution conspiracy, and presumably by then they were satisfied with the integrity of the information, otherwise they would not have sought the indictment. While the court has not ordered production of a transcript of the grand jury proceedings, presumably the government presented sufficient evidence to the grand jury to cause it to conclude that there is probable cause